**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

NOAH KIDD,

                Plaintiff,

v.                                    CIVIL ACTION NO.  3:09-cv-01396

MONSANTO COMPANY, et al.,

                Defendants.

**MEMORANDUM OPINION & ORDER**

Pending before the court is the plaintiff's Motion to Remand Case to the Circuit Court of Putnam County.  For the reasons discussed below, this Motion is **GRANTED**.  This case is **REMANDED** to the Circuit Court of Putnam County.

**I.  Factual and Procedural Background**

The plaintiff filed the Complaint in the Circuit Court of Putnam County on August 3, 2009. (Notice Removal [Docket 1], Ex. 1 ("Compl.").)  This case is one of over a hundred parallel personal injury actions (collectively, the "Parallel Litigations"), filed by the plaintiff's counsel, seeking damages based on defendant Monsanto Company's ("Monsanto") alleged unlawful disposal of dioxin and furan waste material at its Nitro, West Virginia plant site, and the defendants' alleged failure to control this contamination.[1]  The plaintiff asserts that exposure to the contamination caused the plaintiff to develop cancer.

---

[1]

The Complaint states that the Nitro plant was owned and operated by the former Monsanto Company — "Old Monsanto" — "until its pupation into one of more of the herein named defendants," including "New Monsanto," approximately "sometime during and after . . . 1997." (Compl. ¶ 19.)  This Order will simply refer to "Monsanto" rather than distinguish between the company's iterations.

According to the plaintiff, Monsanto owned and operated a chemical plant near Nitro from approximately 1934 to approximately 2000.  (Compl. ¶¶ 3-4.)  The plaintiff alleges that Monsanto produced an agricultural herbicide—2,4,5 –trichlorophenoxyacidic acid ("2,4,5-T")—"which was heavily contaminated with dibenzo dioxins and dibenzo furans."  The plaintiff further asserts that, beginning in 1949, Monsanto "began to dispose of dioxin-contaminated waste . . . in a manner which caused dioxins/furans to escape into the atmosphere contaminating the air in and around the areas" where the plaintiffs live.  (*Id.* ¶ 4.)  More specifically, the plaintiff claims "[t]he production of dioxin contaminated 2,4,5-T continued 7 days a week 365 days a year from 1949 to approximately 1971 at the Monsanto Nitro Plant.  During this entire time period, dioxin-contaminated wastes were burned, 7 days a week, in an open 20 feet by 40 feet pit on the plant site as well as at off-site dumps . . . causing dioxin/furans-contaminated particulate matter to contaminate the air and property in Nitro and surrounding areas."  (*Id.* ¶ 31.)

The plaintiff brings claims against each of the defendants—Monsanto; Pharmacia Corporation; Flexsys America Company; Flexsys America L.P.; Apogee Coal Company, LLC; and Solutia Inc.—"as successors to the dioxins/furans related legacy liabilities" of Monsanto.  (*Id.* ¶ 5.) In relevant part, the plaintiff alleges that defendant Apogee Coal Company, LLC ("Apogee") is a successor to the liabilities of companies that owned or controlled Monsanto's waste disposal site. The plaintiff further maintains that contaminated waste from Monsanto's Nitro plant was "disposed of and burned all with the permission and knowledge of such predecessor companies."  (*Id.* ¶ 74.) The plaintiff asserts that Apogee is a West Virginia corporation, and that when the Complaint was filed, Apogee's principal place of business was Charleston, West Virginia.  (*Id.*)

The defendants removed the Parallel Litigations to this court on December 13, 2009, pursuant to 28 U.S.C. §§ 1332 and 1442.

The plaintiff subsequently filed the Motion to Remand on June 19, 2010

## II. Standard

A Notice of Removal need only contain "a short and plain statement of the ground of removal"; the pleading standard is the same as that imposed on a plaintiff in drafting an initial complaint. *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199-200 (4th Cir. 2008). But when challenged, "'[t]he party seeking removal bears the burden of demonstrating that removal jurisdiction is proper.'" *Id.* (quoting *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006)); *see also Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) ("The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" (quoting *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994))). Congress intended to "restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993). Courts must construe removal jurisdiction strictly "because of the 'significant federalism concerns' implicated." *Dixon*, 369 F.3d at 816 (quoting *Mulcahey*, 29 F.3d at 151). "Therefore, '[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'" *Id.*

## III.  Analysis

The defendants argue that removal of this case is proper on two separate grounds.  First, the defendants assert that complete diversity of citizenship exists between the parties.  The parties agree that the plaintiffs are citizens of West Virginia, and that all of the named defendants, except Apogee, are citizens of other states.  The parties disagree, however, over the citizenship of defendant Apogee.

-3-

Furthermore, the defendants assert that even if Apogee is a West Virginia citizen, the plaintiff's inclusion of Apogee as a defendant constitutes fraudulent joinder, because the plaintiff lacks any basis for asserting the facts underlying the claim against Apogee.

Second, the defendants assert that removal was proper under the federal officer removal statute, 28 U.S.C. § 1442.  That statute permits removal of actions against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued . . . for any act under color of such office."  28 U.S.C. § 1442.  Defendants assert that Monsanto's Nitro plant was engaged primarily in the business of manufacturing 2,4,5-T on behalf of the federal government and that removal under § 1442 was proper.[2]

As explained below, both of the defendants' removal arguments fail.  Remand of this case to the Circuit Court of Putnam County is therefore warranted.

### A. The defendants have not established that Apogee is not a citizen of West Virginia.

Federal diversity jurisdiction requires that every defendant be completely diverse from every plaintiff.  28 U.S.C. § 1332.  The "crucial date" for the determination of Apogee's citizenship in this case is the date the Complaint was filed—August 2, 2009.  *See Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260, 261 (4th Cir. 1974).  Diversity jurisdiction here depends on whether Apogee was a West Virginia citizen on August 2, 2009.

A corporation is "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The parties agree that for

---

[2]

The defendants also asserted that the plaintiff's right to relief "necessarily depends on resolution of a substantial question of federal law," *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)), which establishes federal jurisdiction pursuant to 28 U.S.C. § 1331.  After this ground was challenged by the plaintiff's motion to remand, the defendants abandoned it.

purposes of determining jurisdiction, Apogee's citizenship is determined by the citizenship of its sole corporate member, Magnum Coal Company ("Magnum"). Magnum is incorporated in Delaware. Its "principal place of business" however is in dispute. The plaintiff's Complaint alleges that Apogee is a West Virginia corporation, and that on the date the Complaint was filed, Apogee's principal place of business was located in Charleston, West Virginia. (Compl. ¶ 74.) In their Notice of Removal, the defendants claim that Magnum [and thereby Apogee] "is a citizen of Delaware and *possibly* also a citizen of Missouri, . . . not West Virginia." (Notice Removal ¶ 14.)

Defendants present two arguments to support their assertion that Magnum (and thereby Apogee) is not a West Virginia citizen. First, they argue that Magnum might qualify as an inactive corporation without a principal place of business. In that circumstance, Magnum should only be considered a citizen of its state of incorporation: Delaware. Second, they argue that if Magnum does have a principal place of business, it is in Missouri, not West Virginia. I will address each argument in turn.

1. *Magnum is not an inactive corporation.*

The defendants, citing *Athena Automotive, Inc. v. DiGregori*, 166 F.3d 288, 291 (4th Cir. 1999), argue that Magnum might qualify as an inactive corporation, and, as such, "might appropriately be considered a citizen only of its state of incorporation, Delaware." (Notice Removal ¶ 14.) To qualify as an inactive corporation, a business must "cease[] all operations," and enough time must pass for "the continuing impact of its business" to dissipate. *Athena Auto., Inc.*, 166 F.3d at 291. "[A]s a general matter, an 'inactive' corporation (that is, a corporation conducting no business activities) has no principal place of business, and is instead a citizen of its state of incorporation only." *Midlantic Nat'l Bank v. Hansen,* 48 F.3d 693, 696 (3d Cir.1995).

-5-

To support their argument that Magnum is an inactive corporation, the defendants state that Magnum has no employees and "serves merely as one of several intermediary entities" through which another company "owns and controls its national mining operations." (Notice Removal ¶ 13.) The facts do not support this argument. The defendants admit that Magnum holds a lease of office space in Charleston, and collects payments from a coal purchaser. Furthermore, the defendants concede that, unlike the plaintiff in *Athena Automotive*, Magnum was not totally inactive at the time the Complaint was filed, stating that Magnum's presence in West Virginia "since January 1, 2009, has been . . . to the *almost* total exclusion of any substantive activity." (*Id.* ¶ 13 (emphasis added).). Nevertheless, the defendants request the court to "apply the same principles to reach the same result," due to Magnum's "dearth of activity." (*Id.* 6 n.7.)

I decline this invitation. Magnum continued to conduct some business activities at the time the Complaint was filed, and thus was not an inactive corporation. Magnum was therefore a citizen both of its state of incorporation, Delaware, and its principal place of business. I will now address defendants' second argument, that Magnum's principal place of business was located outside of West Virginia.

> 2. *The defendants have not demonstrated that Magnum's principal place of business is outside of West Virginia.*

A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) "And in practice it should normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the 'nerve center,' and not simply an office where the corporation holds its board meetings." *Id.*

The defendants argue that Magnum's principal place of business at the time the Complaint was filed (insofar as Magnum had a principal place of business) was Missouri.  As evidence, the defendants offer the following:

- On July 23, 2008, Magnum became a wholly owned subsidiary of Patriot Coal Corporation, which is headquartered in St. Louis, Missouri;

- Magnum's corporate records are kept in St. Louis, Missouri;

- The written consents, which have supplanted Magnum's shareholder and directors' meetings, are in St. Louis, Missouri;

- Seven of Magnum's ten corporate officers, and two of its three directors, had offices exclusively in St. Louis, Missouri.

(Resp. Opp'n Mot. Remand [Docket 24], Ex. V, Affidavit of Lawrence I. Bell, July 2, 2010 ¶¶ 1, 4, 5, 6, 7.)

The defendants assert that Magnum's presence in West Virginia since January 1, 2009, "has been in form only — it held a pre-2008 lease of office space in Charleston, West Virginia but did not pay the rent and did not occupy the space."  (Resp. Opp'n Mot. Remand 12 n. 3.)  According to the defendants, "[a] signature of a lease left over from an earlier time and a bank account set up strictly to collect on a single, old debt do not make [. . .] the locus of decision making and control center of corporate affairs" in West Virginia.  (*Id.* at 13.)

The plaintiff rejects the defendants' assertion that Magnum's principal place of business was Missouri.  The plaintiff submits that in April 2009, Magnum admitted in another case before this court that its principal office was located in Charleston, West Virginia.[3]  Furthermore, the plaintiff

---

[3]
Magnum's admission in April 2009 that its "principal office" was located in Charleston, West
(continued...)

asserts that Magnum certified to the West Virginia Secretary of State, in its Annual Report filed March 17, 2010, that its principal office is in Charleston, West Virginia.  (Mem. Supp. Mot. Remand [Docket 20] 4, 6 (citing Answer to Amended Complaint ¶ 3, *McNeal v. Brook Trout Coal, LLC,* No. 09-306 (S.D. W. Va. Apr. 6, 2009)).)  The plaintiff also argues that the defendants have not explained what Magnum's principal business activity is, or how that activity is directed or controlled.  (Reply Resp. Opp'n [Docket 27] 3.)

Magnum's corporate filings merit closer scrutiny.  In Magnum's 2011 Corporation Annual Report, filed on March 17, 2010, it lists its "Home State" as Delaware and its charter type as "foreign," but its "Principal Office" as located in Charleston, West Virginia.  It also lists its President and one of its two Directors as Paul H. Vining, with an office in Charleston, West Virginia.  (Reply Resp. Opp'n, Ex. 1.)  Magnum's Vice President, Secretary, Treasurer, and second Director are listed with Missouri addresses.  The 2010 Limited Liability Company Annual Report for a "Magnum Coal Sales LLC" lists the same Charleston, West Virginia "Principal Address," but also lists West Virginia as its "Home State" and its charter type as "domestic."  (*Id.* at 3.)

The relationship between Magnum Coal Company and Magnum Coal Sales, LLC is unclear.  The filings suggest that the former, at least, is subject to some control from Missouri.  Nevertheless, both listed the location of their "Principal Office" as Charleston, West Virginia.  The term "Principal Office" suggests that Magnum is directed, controlled, and coordinated from that location.  The forms

_____

[3](...continued)
Virginia does not prove that Magnum is a citizen of West Virginia.  The admission pertains to "all times complained of" in the complaint in that case.  The original complaint in that case was filed December 8, 2008; the amended complaint was filed March 5, 2009; and the complaint concerns contracts that were entered into prior to February 2007.  Magnum's admission in April 2009 is irrelevant to this case.

allow companies to list a "Principal Office," "Mailing Address," and, crucially, a "Local Office," strongly suggesting that "Principal Office" refers to the company's overall "nerve center," and not simply its principal in-state office.

The burden of establishing federal jurisdiction falls on the party seeking removal. *See Dixon v. Coburg*, 369 F.3d at 816 (citations omitted). The defendants have failed to establish the state in which Magnum's principal place of business is located. Although Magnum appears to be subject to some control from Missouri, the defendants have not explained what Magnum's principal business activity is and how and where such activity is effectively directed, controlled, and coordinated. At most, they have demonstrated that there is ambiguity surrounding Magnum's principal place of business—ambiguity that must be resolved against the defendants. *See id.; Maggio-Onoranto & Assocs., Inc. v. AEGON N.V.*, 104 F. Supp. 2d 518, 522 (D. Md. 2000). Considering all the evidence together, the defendants have not met their burden of establishing diversity jurisdiction.

### 3. *Apogee Coal has not been fraudulently joined.*

Having determined that the defendants have failed to show complete diversity, I must now address their argument that Apogee was fraudulently joined. To succeed in demonstrating fraudulent joinder, the defendants must show "that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (citation omitted). The removing party must demonstrate either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (internal quotation marks omitted).

-9-

The plaintiff's claim against Apogee is premised on the allegation that Apogee is a successor to the liabilities of companies that owned or controlled Monsanto's waste disposal site, and that contaminated waste from Monsanto's Nitro plant was "disposed of and burned all with the permission and knowledge of such predecessor companies." (Compl. ¶ 74.)  The defendants argue that the plaintiff lacks a basis to assert the facts which underlie its claim against Apogee, insofar as "Plaintiffs' Counsel lacks a reasonable evidentiary foundation for asserting that *anyone* . . . was burning dioxin-contaminated wastes at any time" at Monsanto's site near Nitro, West Virginia. (Notice Removal ¶ 20.) The defendants note that similar complaints filed by plaintiff's counsel, in *Carter v. Monsanto Co.*, No. 3:08-cv-1359 (S.D.W.Va. Nov. 21, 2008), and *Bibb v. Monsanto Co.*, No. 3:08-cv-1358 (S.D.W.Va. Nov. 21, 2008), do not mention the burning of dioxin-contaminated waste; the defendants also state that they are "unaware of any evidence of burning . . . unearthed through discovery in the related class actions upon which this allegation could properly be premised." (*Id.* ¶ 21.) The defendants further assert that because plaintiff's counsel did not sue Apogee in the *Bibb* litigation or in a similar personal injury case recently filed in another federal court, *Spaulding v. Monsanto*, 1:09-cv-9470, they "[do] not actually believe that there exists a valid claim against Apogee." (*Id.* ¶ 21, 9 n.11.)

The plaintiff asserts in the Motion to Remand that there is evidence that the dumping of wastes "'caused large explosions and unusual chemical reactions'" at the site. (Mem. Supp. Mot. Remand 10 (quoting Order Denying Apogee Coal Company's Motion for Summary Judgment, *Carter v. Monsanto*, No. 00-C-300 (Cir. Court Putnam County, W. Va. Nov. 13, 2008)).) The plaintiff also argues that plaintiff's counsel's failure to sue Apogee in other cases is irrelevant. Nevertheless, the plaintiff points out that plaintiff's counsel "zealously (and successfully) opposed Apogee Coal's

motion for summary judgment" in *Carter* "—*when doing so was not necessary* in order to maintain that matter in state (as opposed to federal) court." (Mem. Supp. Mot. Remand 11.)

The defendants have not met their burden of demonstrating fraudulent joinder. Whatever discrepancy might exist between evidence of "large explosions and unusual chemical reactions" and the Complaint's allegations of "burning" is insufficient to justify a finding of "outright fraud." If the allegations in the plaintiff's Complaint are true, the plaintiff will certainly be able to establish a cause of action against Apogee in state court. Furthermore, I agree with the plaintiff that it is irrelevant which defendants are being pursued in other litigation.

The defendants have failed to establish that diversity jurisdiction exists. The only possible remaining basis for this court's jurisdiction is under the federal officer removal statute, 28 U.S.C. § 1442. As laid out below, that jurisdictional basis is also faulty.

**B.  There is no causal nexus between any government control of the manufacturing of 2,4,5 - T and the defendants' waste disposal practices at the plant in Nitro.**

Title 28 U.S.C. § 1442(a)(1) permits removal for suits against federal officers and persons "acting under" them, for their acts "under the color of such office." The defendants assert that Monsanto's Nitro plant, "[f]or many years within the time period pertinent to this case . . . was engaged primarily — and at times exclusively — in the business of manufacturing 2,4,5-T for inclusion in the military defoliant Agent Orange." (Notice Removal ¶ 24.) According to the defendants, Monsanto was compelled by the United States government to satisfy orders for 2,4,5-T, pursuant to detailed and precise specifications. The defendants argue that "[i]n light of the fact that Plaintiff seeks to hold Monsanto liable for injuries allegedly resulting, at least in part, from work performed by Monsanto at the behest of the federal government, there is removal jurisdiction over this action under 28 U.S.C. § 1442(a)(1)." (*Id.* at ¶ 39.) The plaintiff argues that the federal government's

involvement in the manufacture of 2,4,5-T is not relevant to this case, because the claims in the Complaint rest solely upon the defendants' waste disposal practices.

The shadow of prior litigation hangs over this issue. This court has considered the question of federal officer removal jurisdiction in two class action litigations very similar to this case: *Bibb v. Monsanto Co.*, No. 3:08-cv-1358 (S.D.W.Va. Nov. 21, 2008), and *Carter v. Monsanto Co.*, No. 3:08-cv-1359 (S.D.W.Va. Nov. 21, 2008). In *Bibb,* this court found that the plaintiffs alleged that they suffered harm from "the collective and continuous operation of the Nitro Plant in producing 2, 4, 5-T, including production, disposal, and any other process that was part of the plant operation, [and] led to the emission of the dioxins/furans." (Order Granting in Part and Denying in Part Plaintiffs' Motion to Remand at 27, *Bibb v. Monsanto Co.*, No. 3:08-cv-1358 (S.D.W.Va. Dec. 19, 2008).) This court found that "plaintiffs' claims include those based on production processes controlled by the federal government," and concluded that removal would have been proper had it been timely effected. (*Id.*) In *Carter*, however, this court concluded that the plaintiffs' claims arose solely from the defendants' *disposal* of 2,4,5-T waste, which occurred without federal involvement. *Carter v. Monsanto Co.*, 635 F. Supp. 2d 479, 497 (2009). This court thus remanded *Carter* to state court, because there was no "causal nexus between the federal control over the manufacturing at the Nitro Plant and the acts underlying the instant action." *Id.* This court held that defendants could "not establish a basis for federal officer removal unless the defendants disposed of the 2, 4, 5-T waste under the direct and detailed control of the federal government or in furtherance of a specific request by a federal officer." *Id.*

The defendants argue that this case is distinguishable from *Carter* because the plaintiff's injuries allegedly arise from "generalized, airborne dioxin" rather than the "waterborne dioxin

Case 3:09-cv-01396   Document 21   Filed 09/29/10   Page 13 of 13 PageID #: 1494

contamination" at issue in *Carter*.  (See Mem. Opp. Mot. Remand at 18).  The crucial issue is not the type of contamination, but whether the plaintiff alleges harms caused by processes controlled by the federal government or harms caused by processes controlled by the defendants alone.  *Carter*, 635 F. Supp. 2d  at 495 - 97.  The defendants have offered no allegations that the disposal practices at issue in this matter were "under the direct and detailed control of the federal government," or that they result from actions "in furtherance of a specific request by a federal officer," alleging only that the disposal practices created a different *kind* of contamination than the practices at issue in *Carter*.  *Id.* at 497.

Both the *Carter* plaintiffs and the instant plaintiff focus solely on injuries caused by the defendants' disposal practices.  (Compl. ¶ 2.)  Accordingly, no causal nexus exists in either *Carter* or in this case between the federal government's control of manufacturing and the actions underlying the plaintiff's Complaint.  The defendants' removal under § 1442 was improper.

## IV.  Conclusion

For the reasons discussed above, the plaintiff's motion to remand is **GRANTED** and this case is **REMANDED** to the Circuit Court of Putnam County, West Virginia.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          September 29, 2010

Joseph R. Goodwin, Chief Judge

-13-